Filed 10/6/23  P. v. Ruiz CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOJO RUIZ,<br><br>    Defendant and Appellant. | F084931<br><br>(Super. Ct. No. BF166327A)<br><br>**OPINION** |

-ooOoo-

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Kenneth C. Twisselman II, Judge.

William Paul Melcher, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Erin R. Doering and Christopher J. Rench, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Peña, Acting P. J., Meehan, J. and Snauffer, J.

In 2021, appellant and defendant Jojo Ruiz filed a petition to have his 2017 attempted murder convictions vacated and to be resentenced under Penal Code section 1172.6, subdivision (a).[1]  The trial court found him ineligible for relief as a matter of law at the prima facie stage of review and denied his petition.  (§ 1172.6, subd. (c).)  Defendant appealed, and we affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**[2]

In November 2016, in the early morning hours, defendant poured gasoline inside the bedroom he shared with his longtime girlfriend and ignited it.  Defendant's girlfriend and their three children, who had been asleep in a bedroom that shared a wall and doorway with the main bedroom, escaped through the front of the house without injury.  Defendant was arrested several hours later when he returned to the scene of the fire.

On January 3, 2017, an information was filed in the Kern Superior Court charging defendant with the following 10 crimes:  four counts of attempted murder (§§ 187/664), arson of an inhabited dwelling (§ 451, subd. (b)), three counts of child abuse (§ 273a, subd. (a)), felony resisting a peace officer by means of threat or violence (§ 69, subd. (a)), and misdemeanor battery against a cohabitant (§ 243, subd. (e)(1)).  The information alleged that the four attempted murders were premediated, willful and deliberate (§ 189),

---

[1]    All further statutory references are to the Penal Code unless otherwise stated.

[2]    We take judicial notice of the record from defendant's prior appeal and our nonpublished decision in *People v. Ruiz* (Nov. 25, 2019, F076231) (*Ruiz I*).  (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)  In reviewing a section 1172.6 petition, the court may rely on "the procedural history of the case recited in any prior appellate opinion."  (*Id.*, subd. (d)(3); accord, *People v. Clements* (2022) 75 Cal.App.5th 276, 292; *People v. Cooper* (2022) 77 Cal.App.5th 393, 400, fn. 9.)  The role of the appellate opinion is limited, however, and the court may not rely on factual summaries contained in prior appellate decisions or engage in factfinding at the prima facie stage.  (*People v. Clements, supra*, at p. 292; *People v. Lewis* (2021) 11 Cal.5th 952, 972 (*Lewis*).)  We include a limited summary of the crime committed in this case for context and do not rely on the factual statement from our prior opinion to resolve defendant's appeal from the trial court's order denying his petition at the prima facie stage.  (*Lewis, supra*, at p. 972 ["In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'"].)

and that defendant committed the arson "by use of a device designed to accelerate the fire" (§ 451.1, subd. (a)(5)).

On July 6, 2017, jury trial began.

On July 21, 2017, the jury returned verdicts convicting defendant on all counts and finding the premeditation allegations and allegation of arson by use of accelerant device true.

On August 18, 2017, the trial court sentenced defendant to two consecutive and two concurrent terms of life in prison with the possibility of parole for attempted murder, and to three years for resisting a peace officer. Pursuant to section 654, the court imposed and stayed a term of 13 years for arson with an accelerant device enhancement, three 6-year terms for child abuse, and a one-year jail term for battery.

On direct appeal in *Ruiz I*, defendant claimed that his convictions for attempted premeditated murder were unsupported by substantial evidence of intent to kill, and that the trial court erred in instructing the jury on the kill zone theory. (*Ruiz I, supra*, F076231.) Citing Evidence Code section 1043 and *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*), he also requested that this court conduct an independent review of the proceedings related to his motion for discovery from a deputy's personnel file and the trial court's ruling that only two items were subject to disclosure.

We found that defendant's convictions for attempted premeditated murder were supported by substantial evidence. (*Ruiz I, supra*, F076231.) Pursuant to *People v. Canizales* (2019) 7 Cal.5th 591 (*Canizales*), we found that the jury instruction on the kill zone theory was supported by substantial evidence and that, assuming error in light of *Canizales*, any ambiguity in the instruction was harmless. (*Ruiz, supra*, F076231.) Finally, we found no error with either the *Pitchess* proceedings or the partial denial of defendant's discovery motion. (*Ruiz, supra*, F076231.) Therefore, we affirmed the judgment. (*Ibid.*)

## DEFENDANT'S SECTION 1172.6 PETITION

On January 6, 2021, defendant, proceeding in pro. per., filed a petition under section 1172.6, subdivision (a), formerly section 1170.95,[3] requesting resentencing of his convictions for attempted murder and the appointment of counsel. Defendant attached a supporting declaration that consisted of a preprinted form where he checked box (2), that he was convicted of murder, attempted murder, or manslaughter following a trial, or accepted a plea offer in lieu of a trial in which he could have been convicted of murder or manslaughter; and box (3), that he could not presently be convicted of murder or attempted murder because of changes made to sections 188 and 189, effective January 1, 2019. He did not check box (1), that he was eligible for resentencing because a complaint, information, or indictment was filed that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine. He also attached a statement setting forth his accomplishments supporting recall and resentencing in the interest of justice under former section 1170, subdivision (d)(1),[4] and requesting a commutation under section 4801.

On January 20, 2022, the trial court appointed counsel and on March 16, 2022, the court set a briefing schedule.

On September 8, 2022, the trial court held a hearing on defendant's section 1172.6 petition. The court notified the parties of its tentative ruling to deny the petition based on defendant's ineligibility as a matter of law. Defendant's counsel submitted without

---

[3] Effective June 30, 2022, former section 1170.95 was renumbered to section 1172.6. (Assem. Bill No. 200 (2021–2022 Reg. Sess.) (Assembly Bill 200).) We refer to the statute herein by its present section number.

[4] The provision cited was moved to newly added section 1170.03, effective January 1, 2022, and then renumbered to section 1172.1, effective June 30, 2022. (Assem. Bill No. 1540 (2021–2022 Reg. Sess.); Assem. Bill 200.)

argument. Before also submitting, the prosecutor noted there was no jury instruction on the natural and probable consequences doctrine and the jury found premeditated attempted murder. The court then ruled defendant was ineligible for relief as a matter of law and denied his petition.

On September 12, 2022, defendant filed a timely notice of appeal.

Citing *Langi*, defendant claims that the absence of a jury instruction on the natural and probable consequences doctrine is not conclusively determinative of whether the jury convicted him based on an imputed malice theory. (*People v. Langi* (2022) 73 Cal.App.5th 972, 984 (*Langi*).) Although defendant acted alone, he argues that because the record suggests he was convicted under a kill zone theory, "without further factfinding in this case, the record is insufficient to conclusively establish that [he] intended to kill everyone in the kill zone."

The People do not dispute the first point raised, in the abstract. However, with respect to the second point, they contend that defendant may not pursue a claim of trial error in this proceeding and that the kill zone instruction did not permit him to be convicted based on imputed malice.

We affirm the trial court for the reasons that follow.

## DISCUSSION

### I.    Senate Bill No. 1437 and Senate Bill No. 775[5]

Effective January 1, 2019, Senate Bill 1437 "'amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § l, subd. (f).) [¶] To further

---

[5]    Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437); Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775).

that purpose, Senate Bill 1437 added three separate provisions to the Penal Code. First, to amend the felony-murder rule, Senate Bill 1437 added section 189, subdivision (e): 'A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.' …

"Second, to amend the natural and probable consequences doctrine, Senate Bill 1437 added section 188, subdivision (a)(3) (section 188(a)(3)): 'Except [for felony-murder liability] as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime.'

"Third, Senate Bill 1437 added [former] section 1170.95 to provide a procedure for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief under the two ameliorative provisions above." (*People v. Gentile* (2020) 10 Cal.5th 830, 842–843.)

Two years later, the Legislature enacted Senate Bill 775, which, effective January 1, 2022, and relevant to this appeal, amended former section 1170.95 to extend the petition process to those convicted of attempted murder or manslaughter, and reaffirmed the applicable burden of proof at a resentencing hearing. (Legis. Counsel's Dig., Sen. Bill 775, Stats. 2021, ch. 551, § l, subds. (a), (c).) Assembly Bill 200 subsequently renumbered section 1170.95 to section 1172.6, effective June 30, 2022.

## II. Section 1172.6

Section 1172.6, subdivision (a), provides:

"(a) A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, *attempted murder under the natural and probable consequences doctrine*, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:

"(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine.

"(2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder.

"(3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a), italics added.)[6]

The court shall appoint counsel if requested by petitioner. (§ 1172.6, subd. (b)(3).) After service of the petition, the prosecutor shall file and serve a response. The petitioner may file and serve a reply after the response is served. (*Id.*, subd. (c).)

"After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show

---

[6] While not applicable herein, section 189 was amended to allow for felony-murder liability where the victim is a peace officer. (*Id.*, subd. (f).)

cause, it shall provide a statement fully setting forth its reasons for doing so." (§ 1172.6, subd. (c).)

If an order to show cause is issued, "the court shall hold a hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.…" (§ 1172.6, subd. (d)(1).)

"At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens.…" (§ 1172.6, subd. (d)(3).)

## III.    Analysis

### A.    Legal Principles

As stated, the trial court complied with section 1172.6 by appointing counsel, setting a briefing schedule, conducting a hearing, making a finding defendant failed to make a prima facie case for relief, and providing a statement of its reasons for declining to issue an order to show cause. (*Id.*, subds. (b)(3), (c).) Defendant does not contend otherwise.

8.

With respect to the merits of the court's finding, "[t]he record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless" (*Lewis, supra*, 11 Cal.5th at p. 971), "consistent with the statute's overall purpose:  to ensure that … culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process" (*ibid.*).  "Appellate opinions … are generally considered to be part of the record of conviction.  [Citation.]  However, … the probative value of an appellate opinion is case specific, and 'it is certainly correct that an appellate opinion might not supply all answers.'  [Citation.]  In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'"  (*Id.* at p. 972.)  "[T]he 'prima facie bar was intentionally and correctly set very low.'"  (*Ibid.*)

In this case, the trial court relied on the jury instructions, which are part of the record of conviction and may be reviewed to make the prima facie determination, because the instructions "given at a petitioner's trial may provide 'readily ascertainable facts from the record' that refute the petitioner's showing, and reliance on them to make the eligibility or entitlement determinations may not amount to 'factfinding involving the weighing of evidence or the exercise of discretion,'" which must wait to occur until after an order to show cause issues.  (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1055, overruled to the extent that it is not inconsistent with *Lewis, supra*, 11 Cal.5th 952; accord, *People v. Williams* (2022) 86 Cal.App.5th 1244, 1251–1252; *People v. Offley* (2020) 48 Cal.App.5th 588, 599. )  "If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition."  (*People v. Strong* (2022) 13 Cal.5th 698, 708.)

### B. Defendant's Attempted Murder Convictions

#### 1. Attempted Murder Requires Specific Intent to Kill

Defendant was convicted of the willful, deliberate and premeditated attempted murders of his girlfriend and their three children. "An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." (§ 21a.) While murder is an unlawful killing with express or implied malice aforethought (§§ 187, subd. (a), 188; accord, *People v. Rangel* (2016) 62 Cal.4th 1192, 1220), attempted murder requires specific intent to kill, or express malice, "'and the commission of a direct but ineffectual act toward accomplishing the intended killing'" (*People v. Smith* (2005) 37 Cal.4th 733, 739; accord, *People v. Mumin* (Aug. 17, 2023, S271049) 15 Cal.5th 176, 190 [2023 Cal. Lexis 4519, *7] (*Mumin*); *Canizales, supra*, 7 Cal.5th at p. 602; *People v. Gonzalez* (2012) 54 Cal.4th 643, 653–654). Express malice is shown when the defendant "'either desires the victim's death, or knows to a substantial certainty that the victim's death will occur.'" (*People v. Houston* (2012) 54 Cal.4th 1186, 1217; accord, *People v. Covarrubias* (2016) 1 Cal.5th 838, 890.) "Direct evidence of intent to kill is rare, and ordinarily the intent to kill must be inferred from the statements and actions of the defendant and the circumstances surrounding the crime." (*Canizales, supra*, at p. 602.)

Relying on *Langi*, defendant argues, one, that the absence of an instruction on the natural and probable consequences theory is not dispositive of the matter, and, two, that given the "legally inadequate kill zone instruction in this case, the record does not conclusively establish that the *only* reasonable inference from the evidence was that [he] intended to kill everyone in the kill zone." As explained next, *Langi* does not involve analogous facts and does not otherwise aid defendant in this appeal. Further, we disagree that the record in this case supports defendant's position that the kill zone theory created an ambiguity with respect to intent to kill, entitling him remand for an evidentiary hearing.

10.

### 2. *Langi*

In *Langi*, the defendant was one of four men who robbed and beat another group, leading to the death of one victim, who fell and hit his head after being punched. (*Langi, supra*, 73 Cal.App.5th at p. 975.) The defendant was convicted of second degree murder, and the appellate court reversed the summary denial of his section 1172.6 petition and remanded for an evidentiary hearing. (*Langi, supra*, at p. 976.) The court explained, "The jury was not required to find, and did not necessarily find, that it was [the] appellant who threw that punch. Read with the caution dictated by *Lewis*, the prior opinion does not conclusively establish that [the] appellant was convicted as the actual killer. [¶] Assuming the jury found [the] appellant guilty of murder as an aider and abettor, the question becomes whether it could have done so 'under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime.'" (*Id.* at p. 980, fn. omitted, citing former § 1170.95, subd. (a).)

"[T]he standard aiding-and-abetting instructions are ill suited to the crime of second degree murder. If, as here, a trial court uses such an instruction without tailoring it to the specifics of that crime, the instruction creates an ambiguity under which the jury may find the defendant guilty of aiding and abetting second degree murder without finding that he personally acted with malice." (*Langi, supra*, 73 Cal.App.5th at p. 982, fn. omitted, citing *People v. Powell* (2021) 63 Cal.App.5th 689, 712–714.) "Thus, under the instructions that were given, the jury was entitled to conclude that, to be guilty as an aider and abettor of second degree murder, [the] appellant need only have intended to encourage the perpetrator's intentional act—in this case, punching [the victim]—whether or not [the] appellant intended to aid or encourage [the victim's] killing, and whether or not he personally knew of and disregarded the risk of such a killing." (*Langi, supra*, at p. 983, fn. omitted.) "Because the record of conviction does not conclusively negate the possibility that the jury found [the] appellant guilty of second degree murder by imputing

11.

to him the implied malice of the actual killer, without finding that he personally acted 'with knowledge of the danger to, and with conscious disregard for, human life' (CALJIC No. 8.31), an evidentiary hearing is required." (*Id.* at p. 984.)

*Langi* is inapposite. Here, defendant was not tried under an aiding and abetting theory, as he acted alone, and the jury was not instructed on a natural and probable consequences theory or any other theory under which malice might be imputed.

### 3. Kill Zone Instruction

Turning to defendant's kill zone instruction challenge, "[w]hen[, as in this case,] a single act is charged as an attempt on the lives of two or more persons, the intent to kill element must be examined independently as to each alleged attempted murder victim; an intent to kill cannot be 'transferred' from one attempted murder victim to another under the transferred intent doctrine." (*Canizales, supra*, 7 Cal.5th at p. 602, citing & quoting *People v. Bland* (2002) 28 Cal.4th 313, 327–328.) The kill zone theory is a "separate and particularly narrow" concurrent intent theory. (*Mumin, supra*, 15 Cal.5th at p. 193 [2023 Cal. Lexis 4519, *12], citing *Canizales, supra*, at p. 607.) As *Canizales* explained, "[T]he kill zone theory for establishing the specific intent to kill required for conviction of attempted murder may properly be applied only when a jury concludes: (1) the circumstances of the defendant's attack on a primary target, including the type and extent of force the defendant used, are such that the only reasonable inference is that the defendant intended to create a zone of fatal harm—that is, an area in which the defendant intended to kill everyone present to ensure the primary target's death—around the primary target and (2) the alleged attempted murder victim who was not the primary target was located within that zone of harm. Taken together, such evidence will support a finding that the defendant harbored the requisite specific intent to kill both the primary target and everyone within the zone of fatal harm." (*Canizales, supra*, at p. 607; accord, *Mumin, supra*, at p. 193 [2023 Cal. Lexis 4519, *12–13].)

On direct review, we rejected defendant's challenge to the kill zone instruction. (*Ruiz I, supra*, F076231.) Post-*Canizales*, we found that substantial evidence supported the instruction and that the ambiguity identified in *Canizales* was harmless on the facts of this case, which involved the ignition of gasoline inside the house in the middle of the night. (*Ruiz I, supra*, F076231.) In the present appeal, defendant asserts that "this court held the instructional error to be harmless after determining 'it is reasonably probable [the jury] would have concluded that while defendant had the specific intent to kill [his girlfriend] in the fire, he acted with only conscious disregard of the risk that [the children] may be seriously injured or killed.'" This mischaracterizes the record.

In *Canizales*, as a result of the absence of substantial evidence in the record to support a kill zone theory instruction, the jury was instructed on a legally erroneous alternate theory of liability. (*Canizales, supra*, 7 Cal.5th at p. 614.) In this case, the kill zone theory was supported by substantial evidence. *Canizales* stated that "when a kill zone instruction is legally warranted and in fact provided, the standard instruction should be revised to better describe the contours and limits of the kill zone theory .…" (*Id.* at p. 609.) Therefore, we presumed error and concluded "that the kill zone instruction given in this case, although not elaborative, did not result in prejudice to defendant." (*Ruiz I, supra*, F076231 [2019 Cal.App. Unpub. Lexis 7904, *32].)

Pertinent to defendant's mischaracterization of the record, we stated, "Given the flammability of gasoline, the confined area in which it was poured and the fact that [defendant's girlfriend] and the children were physically together in a group, and the clarifying effect of the further closing arguments, we are not persuaded that had the jury been given a more specific kill zone instruction, it is reasonably probable it would have concluded that while defendant had the specific intent to kill [his girlfriend] in the fire, he acted 'with only conscious disregard of the risk that [the children] may be seriously injured or killed.'" (*Ruiz I, supra*, F076231 [2019 Cal.App. Unpub. Lexis 7904, *41–42], quoting *Canizales, supra*, 7 Cal.5th at p. 597.) In other words, in assuming error in the

13.

form of an ambiguity for the purpose of assessing prejudice, we found it was *not* reasonably probable that the jury found intent to kill as to the primary target but "acted 'with only conscious disregard of the risk that [the children] may be seriously injured or killed.'" (*Ruiz I, supra*, F076231 [2019 Cal.App. Unpub. Lexis 7904, *41–42].)

Having clarified that matter, we turn to whether the trial court erred when it denied defendant's petition. "Section 1172.6 offers resentencing for petitioners who have not been determined beyond a reasonable doubt to have the degree of culpability now required for a murder, attempted murder, or manslaughter conviction." (*People v. Strong, supra*, 13 Cal.5th at p. 720.) Relief under section 1172.6 is available to defendants convicted under the natural and probable consequences doctrine or another theory under which malice is imputed to a person based solely on that person's participation in a crime. (*Id.*, subd. (a).) Consequently, when the jury instructions or the jury's verdict reflect that defendant was not convicted under such a theory, the petition is to be denied as a matter of law. (See *People v. Daniel* (2020) 57 Cal.App.5th 666, 677 [instructions]; *People v. Mancilla* (2021) 67 Cal.App.5th 854, 864, 866–867 [verdict].)

In this case, defendant acted alone (*People v. Hurtado* (2023) 89 Cal.App.5th 887, 893), and the jury was not instructed on the natural and probable consequences doctrine (§ 1172.6, subd. (a)). Rather, the record reflects the jury was specifically instructed that, as to each count of attempted murder, it had to find defendant intended to kill. With respect to conviction based on the kill zone theory, the jury was instructed that the prosecutor had to prove, beyond a reasonable doubt, that defendant not only intended to kill his girlfriend, who was the primary target under the theory, but also intended to kill each of the children in the zone. Assuming the jury relied on the kill zone theory to convict defendant, defendant has not identified any ambiguity in the jury instructions that may have been misled by the jury to convict him based on imputed malice.**7** (§ 1172.6,

---

**7** Defendant points out that the jury had questions about the kill zone theory and the trial court allowed additional closing argument. The record, however, reflects that during additional

14.

subd. (a); *Lewis, supra*, 11 Cal.5th at p. 971; *Langi, supra*, 73 Cal.App.5th at p. 982.) Accordingly, we affirm the trial court's order finding him ineligible for relief as a matter of law and denying his petition.

## DISPOSITION

The court's order of September 8, 2022, denying defendant's section 1172.6 petition is affirmed.

---

argument, both the prosecutor and defense counsel stated, unequivocally, that under the kill zone theory, the jury must find defendant had the specific intent to kill his girlfriend, as the primary target, and the specific intent to kill each of the children.